FILED
2010 Dec-22  PM 03:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | |
|---|---|
| **BROADCAST MUSIC, INC.,** *et al.,* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Civil Action No. CV-09-S-1779-NW** |
| ) | |
| **JERRY COCHRAN, INC. d/b/a** ) | |
| **SIDE POCKET LOUNGE, and** ) | |
| **JERRY COCHRAN, individually,** ) | |
| ) | |
| **Defendants.** ) | |

### MEMORANDUM OPINION

Plaintiffs — *i.e.,* Broadcast Music, Inc.; Interior Music Corporation; Chris Layton, Thomas Smedley and Reese Wyans, a partnership d/b/a Manchaca Music; Bill Carter d/b/a Blame Music; Six Palms Music Corporation d/b/a Third Palm Music; Warner-Tamerlane Publishing Corporation; Eleksylum Music, Inc.; No Surrender Music, a division of Praxis International Communications, Inc.; EMI Blackwood Music, Inc.; Emerson Lee Hart, an individual d/b/a Unconcerned Music Publishing; Jason L. Ross, Jason Knowles Pollock, Casey S. Daniel and Gurpreet J. Khals, a partnership d/b/a Sevenmary Three Music; Songs of Universal, Inc.; Only Hit Music, a division of Capital Recovery Assistance, Inc.; Bro 'N' Sis Music, Inc.; Dianna L. Maher, an individual d/b/a Estes Park Music; Tia Maria Sillers, an individual d/b/a Choice is Tragic; Sony/ATV Songs, LLC d/b/a Sony/ATV Melody,

LLC; Rivers Cuomo, an individual d/b/a E.O. Smith; Michael Balzary, John Anthony Frusciante, Anthony Kiedis and Chad Gaylord Smith, a partnership d/b/a Moebetoblame Music; and Bradley Kirk Arnold, Robert Todd Harrell, Matthew Darrick Roberts and Christopher Lee Henderson, a partnership d/b/a Escatawpa Songs (collectively, "plaintiffs") — assert ten counts of copyright infringement under the United States Copyright Act of 1976 (the "Copyright Act"), 17 U.S.C. § 101 *et seq.,* against defendants Jerry Cochran, Inc. d/b/a Side Pocket Lounge and Jerry Cochran, individually.[1]  The case currently is before the court on plaintiffs' motion for the entry of summary judgment in their favor on all counts.  Upon consideration of the motion, the briefs, and the evidentiary submissions, the court concludes the motion is due to be granted, and judgment is due to be entered in plaintiffs' favor for the relief requested in their amended complaint.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[2]  In

---

[1] *See* doc. no. 1 (Complaint); doc. no. 9 (Amended Complaint).

[2] Rule 56 was amended, effective December 1, 2010, in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "will not affect continuing development of the decisional law construing and applying these phrases."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.) (emphasis supplied). Consequently, cases interpreting previous versions of Rule 56 are equally applicable to the revised

other words, summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)).  Inferences in favor of the non-moving party are not unqualified, however.  "[A]n inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).  Moreover,

> [t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921) (emphasis supplied).

*See also Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986) (asking "whether the evidence presents a sufficient disagreement to require submission to a

version.

3

jury or whether it is so one-sided that one party must prevail as a matter of law").

## II. SUMMARY OF FACTS

Plaintiff Broadcast Music, Inc. ("BMI"), is a "non-profit making music performing rights organization."[3]

> Through agreements with copyright owners such as music publishing companies and composers, BMI acquires non-exclusive public performance rights. . . . BMI, in turn, grants to music users such as broadcasters and the owners and operators of concert halls, nightclubs and hotels, the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements."[4]

BMI distributes all of its license income to the copyright owners with whom it contracts, after deducting operating expenses and reasonable reserves.[5]

The other plaintiffs are owners of registered copyrights in the ten musical compositions that are the subject of this lawsuit,[6] and BMI has acquired non-exclusive public performance rights to each of those compositions.[7]   Additionally,

---

[3]Plaintiffs' evidentiary submission, Exhibit A (Affidavit of Kerri Howland-Kruse), at ¶ 3. The Copyright Act refers to organizations like BMI as "performing rights societies," which the Act defines as "an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such works, such as the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), and SESAC, Inc." 17 U.S.C. § 101.

[4]Howland-Kruse Affidavit, at ¶ 2.

[5]*Id.* at ¶ 3.

[6]*Id.* at ¶ 4.  Copies of the registration certificates for each of the ten copyrighted musical compositions at issue, as well as documentation of the chain of ownership of each of the compositions, are attached to the Affidavit of Kerri Howland-Kruse as Exhibit A.

[7]*Id.* at ¶ 2.

each plaintiff has granted BMI the right to maintain actions for infringement of the public performance rights in their musical compositions and to seek damages for such infringement.[8]

Defendant Jerry Cochran ("Cochran") owns a corporation named "Jerry Cochran, Inc.," which operates an establishment called "Side Pockets Lounge,"[9] located at 1816 Darby Drive in Florence, Alabama.[10] Jerry Cochran, Inc. has the right and ability to direct and control all the activities of Side Pockets Lounge.  Jerry Cochran, in his capacity as an employee of Jerry Cochran, Inc., operates, maintains, and controls the day-to-day activities of Side Pockets Lounge.[11] Side Pockets Lounge primarily is a billiards hall, but recorded music also is regularly played there, and live music occasionally is performed on a stage in the rear of the building.  Jerry Cochran is responsible for hiring the bands that play live music at Side Pockets Lounge.[12]

BMI has sent repeated notices to Jerry Cochran at Side Pockets Lounge, advising him of his obligation to purchase a license for any copyrighted musical compositions that might be played at the establishment.  First, on  March 1, 2007,

---

[8]*Id.* at ¶ 5.

[9]The parties dispute whether the establishment is called "Side Pocket Lounge" or "Side Pockets Lounge," but the distinction is not material to the issues addressed in this opinion.

[10]Defendants' evidentiary submission, Exhibit 1 (Affidavit of Jerry Cochran), at ¶ 1.

[11]*See* Howland-Kruse Affidavit, Exhibit B (Defendants' Response to Plaintiffs' First Request for Admission), at 2-3 (Responses to Requests for Admission Nos. 3-7).

[12]Cochran Affidavit, at ¶ 2.

BMI sent a letter to the Lounge, advising that a license was required, and enclosing an informational brochure, a BMI license agreement, and a license fee schedule. Cochran did not respond, either individually or on behalf of Jerry Cochran, Inc. or Side Pockets Lounte.[13]  BMI sent similar letters on April 9, May 7, June 6, July 26, August 2, September 28, and November 5, 2007.[14]  On November 6, 2007, BMI sent Jerry Cochran a letter at Side Pockets Lounge, enclosing "information regarding music licensing that [he] requested for [his] attorney's review."  BMI once again explained the licensing process, and requested that Cochran sign and return a license agreement.[15]  Cochran still did not comply, and BMI continued to send follow-up letters.  On December 17, 2007, Cochran received a letter at Side Pockets Lounge from an in-house BMI attorney.  That letter stated:

> If BMI does not receive a completed license agreement from you, or a response to this letter indicating that you have otherwise licensed the BMI music used in your business, this letter serves as notice that you must discontinue the public performance of any BMI-affiliated music. The public performance of BMI-affiliated music without the proper authorization constitutes copyright infringement and may result in substantial damages under the Federal Copyright Law.[16]

In its May 7, November 6, and December 17, 2007 letters to Cochran at Side

---

[13]Plaintiffs' evidentiary submission, Exhibit B (Affidavit of Lawrence E. Stevens), at ¶ 3. The court could not locate a copy of the March 1, 2007 letter in the record.

[14]Stevens Affidavit, at ¶ 5 and Exhibit 1.

[15]*Id.*

[16]*Id.*

Pockets Lounge , BMI enclosed copies of a brochure entitled "The Legal Aspects of Performing Copyrighted Music:  Questions Most Often Asked About Music Licensing."   The question-and-answer section of that brochure contained the following:

**1.  Is the owner of an establishment legally responsible for seeing that music is licensed if it is performed by independent contractors?**

Yes.  Even if the persons who actually perform the music on the proprietor's premises are independent contractors, rather than employees, the owner of the premises is legally responsible if the music performed is unlicensed.  Whether or not the proprietor knows what music the performers are playing, and whether or not he or she has any knowledge as to the existence or ownership of the copyrights in the music performed, he is still obligated by the copyright law to see to it that the performance of music played on his premises is authorized.

Liability for unlicensed performances also rests with the owner of an establishment that is leased, when the proprietor knows that music is likely to be played at the event and has any financial interest in the event for which the establishment was leased.  This holds true even if the musicians are hired by the lessee.

**2.  Is a stockholder or officer of a corporation which owns an establishment personally liable?**

Yes.  A corporate officer with a direct financial interest in the corporation and the right or ability to supervise the operation of an establishment where music is performed, even if he doesn't exercise that right, is jointly and severally liable with the corporate entity for infringement.

There is no question that a corporate director, officer or

stockholder who actually participates in the infringement is liable along with the corporation.  It is equally clear that an officer and principal stockholder who controls or has the right and ability to control and set aside for the corporation is personally liable.

  . . . .

**5.  If the proprietor tells the musicians not to play music in the BMI repertoire, is he responsible if they nevertheless do so without his permission?**

  Yes.  Cases have held that proprietors of premises where performances occur without permission are liable even if the musicians violate specific instructions not to play the music.

  The law is clear that if the proprietor of an establishment knew that permission or a license was needed to have music performed on his premises, he cannot claim he was an "innocent infringer."

  Moreover, BMI advises proprietors of the need to obtain a license to perform music licensed by BMI.  If they ignore that need, a court must award BMI damages of between $750 and $30,000 *per song,* plus attorney's fees and costs.  In most cases, an injunction against further unauthorized use of BMI's music will be issued as well.  Courts have held that the damages awarded should be substantially greater than the license fees that would have been paid by the music user.

**6.  If the business where the music is performed is operating at a loss or for charitable purposes, is the proprietor exempt from the responsibility of obtaining a license?**

  No.  The need to obtain permission to perform music publicly is not contingent upon the profitability of the proprietor's business.  A court will take into account many factors, including the defendant's regular use of music.[17]

---

[17]Doc. no. 25 (Supplemental Affidavit of Lawrence E. Stevens), at ¶¶ 13-14 and Exhibit 4, at 4-7 (footnotes omitted).  BMI also sent defendants another brochure, entitled "BMI Music Use

On April 25, 2008, BMI sent Cochran a "cease and desist" letter, stating:

Dear Mr. Cochran:

As you have not responded to our correspondence and in the absence of a licensing agreement with BMI, this shall serve as formal notice to you that effective this date, you must cease all use of BMI licensed music in your business or organization. The continued use of music in the BMI repertoire without an authorization will result in copyright infringement. Copyright infringement is a violation of federal law. Copyright infringement may subject you to substantial damages. BMI is prepared to take whatever action may be necessary to protect the rights of its composers and publishers. Refer any questions regarding this matter to (888) 689-5264.[18]

Cochran still did not obtain a license from BMI, and BMI subsequently sent him reminder letters on June 24, August 1, August 25, October 22, and December 22, 2008, as well as on January 12, February 19, and April 22, 2009. Some of those letters contained the following advisory language: "Violations of the copyright law are expensive. Damages for infringement of at least $750 per song, which can be significantly increased by the courts, are set forth in Title 17 of the United Sates Code (Copyright Law)."[19]

BMI sent an investigator to Side Pockets Lounge on the evening of April 4,

---

in Eating and Drinking Establishments Q & A Brochure," along with its March 1 and April 9, 2007 letters. *See* Supplemental Stevens Affidavit, at ¶¶ 11-12 and Exhibit 3. A copy of the brochure is in the record, and defendants do not deny receiving it. Even so, the court cannot locate the provision of the brochure on which plaintiffs rely.

[18]*See* Stevens Affidavit, at ¶ 6 and Exhibit 2.

[19]*Id.*

2009 and the early morning hours of April 5, 2009, to determine if any of the songs in BMI's repertoire were being played without a license. The investigator observed a band called "Gone Arye" performing covers of the ten copyrighted songs that are the subject of this action: *i.e.,* "Ain't No Sunshine"; "Crossfire"; "Hey Joe Where You Gonna Go a/k/a Hey Joe"; "Keep Your Hands to Yourself"; "Open Up Your Eyes"; "Cumbersome"; "Blue on Black"; "Hash Pipe"; "Dani California"; and "Landing in London."[20]  Jerry Cochran, acting on behalf of Jerry Cochran, Inc., hired the band Gone Arye to perform at Side Pockets Lounge on April 4 and 5, 2009.[21]

On May 29, 2009, BMI sent a letter to "Mr. Jerry Cochran, President, Jerry Cochran, Inc., Side Pocket Lounge, 1816 Darby Dr., Florence, AL 35630," informing Mr. Cochran that a BMI Music Researcher had been to Side Pockets Lounge and observed "infringement of BMI-licensed music."  BMI also explained that Mr. Cochran and Jerry Cochran, Inc. owed $13,327.20 in unpaid licenses fees for the three-year time period between March 1, 2007 and February 28, 2010, plus $419.09 in investigation expenses, for a total amount of $13,746.29.  Finally, BMI informed Mr. Cochran that he and Jerry Cochran, Inc. had five days to pay all past and present license fees owing to BMI, and to sign a licensing agreement, or the matter would be

---

[20]*See* Stevens Affidavit, at ¶ 10 and Exhibit 3.

[21]Cochran Affidavit, at ¶ 4.

referred to BMI's attorneys "for whatever action they deem necessary."[22]

Jerry Cochran testified that Side Pockets Lounge had a policy that each band or individual musician who played music at Side Pockets Lounge was responsible for his, her, or its own song list. If a performer played any song that was not its own composition, Cochran placed the responsibility on the performer for complying with any licensing obligations. To inform others of this policy, Cochran posted a sign at Side Pockets Lounge that read:

## ATTENTION PERFORMING ARTISTS !!!

> Side Pocket Lounge and Jerry Cochran Inc. require all bands that perform on the premises to be responsible for the music that they perform in regards to licensed music from artists signed with ASCAP, BMI, SESAC, etc. Side Pocket Lounge and Jerry Cochran Inc. will not be held responsible for copyright infringement or monetary payment to the above mentioned companies due to music that is performed from bands on the premises. Bands will be held responsible.[23]

Jerry Cochran does not know whether the band Gone Arye was licensed to perform the musical compositions they chose on April 4 and 5, 2009.[24] BMI has no record of Gone Arye ever obtaining a license to perform any of the musical compositions in its repertoire.[25] More specifically, BMI also has no record of Gone

---

[22]*See* Stevens Affidavit, at ¶ 5 and Exhibit 1.

[23]*See* Cochran Affidavit, at ¶¶ 3-4 and Exhibit C (emphasis in original).

[24]Cochran Affidavit, at ¶ 5.

[25]Supplemental Stevens Affidavit, at ¶ 9.

Arye ever obtaining a license directly from any of the composers or publishers of the musical compositions that are the subject of his lawsuit.[26]

## III. DISCUSSION

### A.    Defendants' Liability for Copyright Infringement

The Copyright Act grants a copyright owner the exclusive right to perform, or authorize others to perform, a copyrighted musical work.  17 U.S.C. § 106(4).  Any person or entity who violates this exclusive right is an infringer of the copyright, and is subject to an action for infringement.  17 U.S.C. § 501(a) & (b).

> "To establish a prima-facie copyright infringement case for a musical composition, a plaintiff may prove (1) ownership of a valid copyright and (2) 'public performance' of the copyrighted work without authorization." *Simpleville Music v. Mizell*, 451 F. Supp. 2d 1293, 1295 (M.D. Ala. 2006) (Thompson, J.) (citing 17 U.S.C. § 106(4) (subject to specific exclusions outlined in the Copyright Act, "the owner of copyright ... has the exclusive rights ... in the case of ... musical ... works to perform the copyrighted work publicly")); *cf. Feist Publications, Inc. v. Rural Telephone Service Co., Inc*. 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.").

*Joelsongs v. Shelley Broadcasting Co., Inc.*, 491 F. Supp. 2d 1080, 1084 (M.D. Ala. 2007).

Defendants do not dispute that plaintiffs own valid copyrights (or, with regard

---

[26]BMI's Affiliate Agreements allow composers and publishers affiliated with BMI to issue a license directly to a performer, but require any direct licenses to be reported to BMI within ten days.  *See* Supplemental Stevens Affidavit, at ¶¶ 4-7 and Exhibits 1-2.

to BMI, non-exclusive performance rights and the right to pursue infringement) in the ten musical compositions that are the subject of this action, or that those musical compositions were performed at Side Pockets Lounge on April 4, 2009. Thus, the only remaining element is whether the performances were unauthorized.

Defendants acknowledge that neither of them obtained a license — either from BMI or from the composers and/or publishers themselves — for copyrighted musical works in BMI's repertoire to be performed at Side Pockets Lounge. Even so, defendants argue that they are not liable for copyright infringement because they did not perform the copyrighted musical works themselves, and because they cannot be held vicariously liable for the band Gone Arye's performance of those works.

None of defendants' arguments has any merit. "Where a copyright infringement case involves live performances by musicians or disc jockeys, the owner of the establishment may be subject to vicarious liability for the infringement if it has 'the right and ability to supervise the infringing activity and also has a direct financial interest in such activities.'" *New World Music Co. v. Tampa Bay Downs,* No. 8:07-cv-398-T-33TBM, 2009 WL 35184, at *4 (M.D. Fla. Jan. 6, 2009) (quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971)). *See also M.L.E. Music Sony/ATV Tunes, LLC v. Julie Ann's, Inc.,* No. 8:06-cv-1902-T-17-EAJ, 2008 WL 2358979 (M.D. Fla. June 9, 2008) ("Even if a

proprietor is unaware of the violation, he is generally liable if his entertainers or employees perform copyrighted works.") (citing *International Konvin Corp. v. Kowalczyk,* 855 F.2d 375, 378 (7th Cir. 1988)); *Broadcast Music, Inc. v. Niro's Palace, Inc.,* 619 F. Supp. 958, 961 (N.D. Ill. 1985) ("[N]ot only is the performer liable for infringement, but so is anyone who sponsors the performance.") (citing *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 157 (1975)).

Jerry Cochran, Inc., as owner of Side Pockets Lounge, clearly had the right and ability to supervise the playing of music at the establishment and — as the entity that paid the band and received the any income generated as a result of their music — had a direct financial interest in the playing of music at the establishment. Accordingly, Jerry Cochran, Inc., can be held vicariously liable for Gone Arye's performance of any copyrighted musical works.

The person named Jerry Cochran also can be held *individually* liable.

A person, "including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Southern Bell. Tel. & Tel. Co. v. Associated Tel. Directory Publishers*, 756 F.2d 801, 811 (11th Cir. 1985) (citation omitted). Similarly, "under the Copyright Act, an individual who is the dominant influence in a corporation, and through his position can control the acts of that corporation, may be held jointly and severally liable with the corporate entity for copyright infringements, even in the absence of the individual's actual knowledge of the infringements." *Simpleville Music*, 451 F. Supp.2d at 1299 (quoting *Quartet Music v.*

*Kissimmee Broadcasting, Inc.*, 795 F. Supp. 1100, 1103 (M.D. Fla. 1992)) (Kellam, J.).

*Joelsongs,* 491 F. Supp. 2d at 1084.  Jerry Cochran is not a mere employee of Jerry Cochran, Inc.  Quite the contrary, he is the President and sole shareholder of the corporation, and he manages the day-to-day operations of Side Pockets Lounge.  Even more importantly, he is the individual responsible for hiring musicians to perform at Side Pocket Lounge.  Thus, Jerry Cochran is the "dominant force" behind Jerry Cochran, Inc., and he can be held jointly and severally liable with the corporation for any acts of copyright infringement occurring at Side Pockets Lounge.

Defendants' final argument is that they cannot be held vicariously liable for any copyright infringement committed by the band Gone Arye, because there is no evidence that Gone Arye did not have a license to perform the musical works it performed at Side Pickets Lounge on April 4, 2009.  Defendants are correct that, as a general rule, "secondary [or vicarious] liability cannot be imposed without first establishing direct infringement by the performer.'" *New World Music Co.,* 2009 WL 35184, at *4 (citing *UMG Recordings, Inc. v. Sinnott,* 300 F. Supp. 2d 993, 997 (E.D. Cal. 2004) (in turn citing *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1013 n.2 (9th Cir. 2001))).  Defendants are *not* correct, however, about where the burden of establishing the performer's direct infringement lies.  Defendants suggest that

15

plaintiffs bear the burden of proving that Gone Arye was unlicensed, but most courts within this Circuit hold — and this court is persuaded that the better reasoned rule is — that "[d]efendants bear the burden of establishing authorization of the direct infringer in a case involving vicarious liability." *New World Music Co.,* 2009 WL 35184, at *5. Courts consider the argument that the performer was authorized to perform the works at issue to be similar to an affirmative defense, which must be raised and supported by the defendant. As the district court stated in *M.L.E. Music Sony/ ATV Tunes, LLC v. Julie Ann's, Inc.,* No. 8:06-cv-1902-T-17-EAJ, 2008 WL 2358979 (M.D. Fla. June 9, 2008):

> In response to Plaintiffs' request for admissions, Defendants admitted that it [sic] did not have permission by ASCAP to publicly perform for profit any of the songs. In addition, Defendants failed to bring forth evidence that the karaoke operator had a license to perform Plaintiffs' copyrighted songs. The non-moving party "may not rest upon its mere allegations," Fed. R. Civ. P. 56(e);[27] *Celotex,* 477 U.S. at 324, but must

---

[27]The relevant portion of the revised Rule 56 reads as follows:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

16

present "'significant probative evidence'" that shows there is more than "'some metaphysical doubt as to the material facts.'" [*Broadcast Music, Inc. V. H.S.I., Inc.,* No. C2-06-482, 2007 WL 4207901, at *3 (S.D. Ohio Nov. 26, 2007) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993)). Defendants' mere assertion that the karaoke operator could have obtained authorization to play Plaintiffs' musical works is insufficient to preclude summary judgment. Defendants had ample time to investigate whether or not the karaoke operator operated under a license or was granted permission to play the songs prior to filing their answer. Defendants have the burden of proving the existence of authorized use, [*I.A.E. v.*] *Shaver*, 74 F.3d [768, ]775 [(7th Cir. 1996)] and should have asserted the affirmative defense at the time they filed their answer. Summary judgment should be granted where Defendants merely allege, without providing evidence, that their agent obtained a license to play Plaintiffs' copyrighted songs. Thus, Plaintiffs' [sic] met their initial burden of proof in showing that Defendants' public performance of its [sic] copyrighted musical works was unauthorized. When questions are raised concerning facts material to a defendant's liability under the copyright law, a motion for summary judgment is defeated. [*Broadcast Music, Inc. v. Coco's Development Corp.*, No. 79-cv-391, 1981 WL 1364 at *1 (N.D. N.Y. Apr. 9, 1981)]. Defendants, however, failed to show that a genuine issue of material fact exists with regard to their liability. Plaintiffs met their initial burden in showing the absence of a genuine issue of material fact. Where, as here, material facts are not in dispute, Plaintiffs are entitled to summary judgment.

*M.L.E. Music,* 2008 WL 2358979, at *4.

In the present case, plaintiffs not only alleged that Gone Arye did not have a license to perform any of the works it selected on April 4, 2009; they also presented affidavits stating that BMI had no record of ever granting a license to Gone Arye, or of Gone Arye ever being granted a license directly from any of the original composers and/or publishers of the works. In response, defendants presented only the testimony

of Jerry Cochran that he did not know whether Gone Arye had a license.  That is not sufficient to satisfy defendants' burden, as the non-moving party, of producing evidence to demonstrate a genuine fact dispute with regard to Gone Arye's authorization to perform plaintiffs' copyrighted works.

The sole case defendants rely upon to support their argument, *Polygram International Publishing, Inc. v. Nevada/TIG, Inc.,* 855 F. Supp. 1314 (D. Mass. 1994), does not mandate a contrary result.  The facts in *Polygram* were similar to those of the case at bar: *i.e.,* several copyright holders in musical compositions sued the organizers of a trade show for copyright infringement when their compositions were performed at the trade show without permission.  *Id.* at 1317.  The defendants argued that they could not be held liable for copyright infringement because the musical works actually were performed by a disc jockey and the proprietors of trade booths, not by the show's organizers themselves.  *Id.* at 1317-18.  There was no evidence as to whether the disc jockey or the booth proprietors were licensed to perform the copyrighted works, and the parties disputed whether that lack of evidence prevented the plaintiffs from establishing a *prima facie* case of copyright infringement.  *Id.* at 1319-20.  The Massachusetts court concluded

> that the plaintiff has the burden of proof on the issue of authorization. It may nevertheless be true, however, that after some kind of showing by a plaintiff, a defendant may bear a burden of *production*.

18

. . . .

In the case of copyright infringements by itinerant musicians or other, transient performers, it may very well be that a defendant who hires the musicians is in a better position than the copyright holder to establish whether the musicians are authorized to perform, and that once a plaintiff makes an initial showing of a prima facie case (at least if plaintiff offers an evidentiary showing, perhaps based only on a good faith statement of information and belief), a burden of production should shift to the defendant. I conclude, however, that even if a court adopts a rule of procedural law that shifts to the defendant a burden of production, the plaintiff cannot invoke that rule without at least making a statement, under the pains and penalties of perjury, that the plaintiff believes the performers were unauthorized.

For the foregoing reasons, I conclude that the plaintiffs in this case have an initial evidentiary burden to come forward with some statement that the performers of the copyrighted works did not have authorization from the copyright holders or their agents. On the record now before the court, the plaintiffs never explicitly contended that the exhibitors, band, or disc jockey were unauthorized. Plaintiffs put forward no evidence of a direct infringement. They did not purport to say that ASCAP had searched for and found no record of licensing any of the five exhibitors, the disc jockey, or the Jazz Barons. They did not say that no plaintiff had personally authorized any of the performances. Even if I were to hold that a settled legal rule, or a newly fashioned rule, shifts the burden to the defendants to come forward with proof of authorization once the plaintiffs make a good faith affirmation that the performers lacked authorization, the plaintiffs have not done enough to invoke the rule in this case.

*Polygram,* 855 F. Supp. at 1323 (emphasis in original). *See also id.* at 1324

("Plaintiffs have the burden of proof, although not necessarily the burden of

production at every stage of trial, to establish each element of their prima facie case

of copyright infringement.  Because plaintiffs have failed at trial to establish the fifth element, the *performer's* lack of authorization for the copyrighted performance, defendants are entitled to judgment.") (emphasis in original).

Here, in contrast, plaintiffs presented evidence that BMI has no record of ever granting Gone Arye a license to perform any copyrighted works in its repertoire, and no record that any of the composers or publishers granted Gone Arye a direct performance license.  Thus, even under the holding in *Polygram,* the burden can be shifted to defendants to establish that Gone Arye *did* have a license.  *Cf. New World Music Co.,* 2009 WL 35184, at *6 ("This Court declines to apply the holding in *Polygram* to the facts here because Plaintiffs have not only alleged lack of authorization in their complaint and in their summary judgment motion, they have pointed to evidence in the record to support their allegation.").  Defendants have not satisfied that burden, and, consequently, plaintiffs have established the final element of their *prima facie* case of copyright infringement.

In summary, there is no genuine issue of material fact with regard to any element of plaintiffs' *prima facie* case of copyright infringement.  Summary judgment therefore is due to be granted in plaintiffs' favor on all ten counts of copyright infringement alleged in plaintiffs' amended complaint.

**B.     Plaintiffs' Relief**

Plaintiffs have requested a permanent injunction prohibiting any future copyright infringement, statutory damages, and costs (including a reasonable attorney's fee).

## 1.    Injunctive relief

The Copyright At provides that "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  The only argument defendants offer in response to plaintiffs' request for injunctive relief is that plaintiffs have failed to establish that any infringement occurred.  As discussed, plaintiffs *have* established a claim for copyright infringement.  Accordingly, they are entitled to the injunctive relief provided by the Copyright Act.

## 2.    Statutory damages[28]

---

[28]It is proper for the court to assess plaintiffs' damages at the summary judgment stage, and it conversely is not necessary to advance the case to trial before damages may be considered.  As an initial matter, no has party made a demand for a jury trial*, e.g., Broadcast Music, Inc. v. Entertainment Complex, Inc.,* 198 F. Supp. 2d 1291, 1294 (N.D. Ala. 2002) ("Of course, a party may waive its Seventh Amendment right to a jury trial if he fails to make a timely jury request.") (citing *Burns v. Lawther,* 53 F.3d 1237, 1240 (11th Cir. 1995); *LaMarca v. Turner,* 995 F.2d 1526, 1544 (11th Cir. 1993)).  Furthermore,

> courts have recognized that it may be appropriate for a judge to make his determination as to statutory damages in conjunction with the resolution of a motion for summary judgment, so long as the parties have been afforded proper notice and an opportunity to submit their evidence on the underlying facts germane to the award and such evidence gives the judge a sufficient factual basis upon which to make his

The Copyright Act also allows for statutory damages:

**(c) Statutory Damages. —**

**(1)** Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection all the parts of a compilation or derivative work constitute one work.

**(2)** In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.  In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200. The court shall remit statutory damages in any case where an infringer believed and had reasonable grounds for believing that his or her use of the copyrighted work was a fair use under section 107, if the infringer was:  (i) an employee or agent of a nonprofit educational institution, library, or archives acting within the scope of his or her employment who, or such institution, library, or archives itself, which infringed by reproducing the work in copies or phonorecords; or (ii) a public broadcasting entity which or a person who, as a regular part of the nonprofit activities of a public broadcasting entity (as defined in subsection (g) of section 118) infringed by performing a published nondramatic literary work or by reproducing a transmission program embodying a performance of such a work.

---

decision.

*Broadcast Music, Inc.,* 198 F. Supp. 2d at 1295 (citations omitted).

17 U.S.C. § 504(c)(1)-(2) (boldface emphasis in original).

Plaintiffs request a total award of $30,000, or $3,000 for each act of infringement by defendants. According to plaintiffs, an increase of the statutory minimum of $750 per occurrence is warranted because defendants' violations of their copyrights were repeated and willful. Defendants object to an enhanced damages award,[29] and instead argue that the damages award should be decreased to $200 per violation pursuant to 17 U.S.C. § 504(c)(1)-(2), because they did not know (and had no reason to know) that their actions would constitute a copyright violation.

"Courts have wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Dream Dealers Music v. Parker,* 924 F. Supp. 1146, 1153 (S.D. Ala. 1996) (citations and internal quotation marks omitted).

> This court is not without guidance in determining what is a just damage award under the circumstances. "Factors to be considered include: (1) the expenses saved and profits reaped by the defendant in connection with the infringements; (2) the revenues lost by the plaintiffs as a result of the defendant's conduct; and (3) the infringer's state of mind-whether willful, knowing or merely innocent." *Major Bob*[ *Music v. Stubbs,*], 851 F. Supp. [475,] 481 [(S.D. Ga. 1994)] (citing *Nick-O-Val Music Co. v. P.O: S. Radio, Inc.,* 656 F. Supp. 826, 829 (M.D. Fla.1987)). Foremost, the court must award an amount that will put the defendant on notice that it costs more to violate the copyright law than

---

[29]Defendants also object to the award of *any* amount of statutory damages, because they insist that they did not commit any acts of infringement. That argument has no merit, as the court already has determined that defendants did commit copyright infringement.

to obey it. *U.S. Songs*[, *Inc. v. Downside Lenox, Inc.,*] 771 F. Supp. [1220,] 1229 [(N.D. Ga. 1991)].

*Dream Dealers Music,* 924 F. Supp. at 1153.  Courts often award damages in excess of the statutory minimum when the infringer has been repeatedly warned that he needed to obtain a license and that his failure to so could result in legal action and the imposition of damages.  *See, e.g., Joelsongs,* 491 F. Supp. 2d at 1085 (granting damages above the statutory minimum when the defendants had been repeatedly offered a license to perform the music lawfully, and had been repeatedly cautioned that, without the license, their conduct would violate copyright laws); *M.L.E. Music Sony/ATV Tunes, LLC,* 2008 WL 2358979, at *5 ("It is undisputed that Defendants willfully committed a violation of the Copyright Act since ASCAP repeatedly notified and warned Defendants that publicly performing copyrighted works without a license constituted copyright infringement."); *Dream Dealers Music,* 924 F. Supp. at 1153 ("Parker clearly was on notice during that entire period of his need for an ASCAP license.  Nevertheless, he knowingly and intentionally chose to infringe upon the plaintiffs' copyrights.").

In keeping with the principle of awarding statutory damages to deter wrongful conduct, courts often award damages based on some multiple of unpaid licensing fees. Awards of two to three times what the infringer would have paid for licensing fees are common.  *See e.g.* [*International Kerwin Corp.*], 855 F.2d at 383 (finding that the district court's award of approximately three times the cost of a properly

purchased license was appropriate to deter future violations); *M.L.E. Music*, 2008 WL 2358979, at *5 (awarding three times the amount of unpaid licensing fees in statutory damages); *Nick-O-Val Music*, 656 F. Supp. at 829 (awarding $50,000 in damages where defendants saved approximately $22,000 in licensing fees); *Blue Seas Music*,[*Inc. v. Fitness Surveys, Inc.*], 831 F. Supp. [863,] 866 [(N.D. Ga. 1993)] (awarding almost four times the unpaid licensing fees in statutory damages); *U.S. Songs*, 771 F. Supp. at 1229 (awarding $7,500 in damages where unpaid licensing fees totaled approximately $2,300).

*New World Music Co.,* 2009 WL 35184, at *11.

Here, the evidence demonstrates that BMI diligently attempted to inform defendants, over approximately a two-year period, of their need to obtain a license before any of the musical works in BMI's repertoire could be performed at Side Pockets Lounge. BMI also informed defendants that they would be liable for violations of the copyright law if protected, unlicensed musical works continued to be played at Side Pockets Lounge. Defendants cannot dispute that they received these notices, yet refused to obtain a license from BMI. The record also reflects that it would have cost defendants $13,327.20 to obtain a BMI license covering the relevant time period of March 1, 2007 to February 28, 2010, and that BMI incurred $419.09 in expenses to investigate defendants' infringement. Accordingly, the court concludes that plaintiffs' requested damages of $30,000.00, or approximately 2.2 times the amount of unpaid license fees and expenses, is a just and reasonable deterrent to any future infringement by defendants.

The court is not persuaded by any of defendants' arguments against the award of damages in excess of the statutory minimum.  Defendants' infringement cannot reasonably be classified as "innocent," as defendants received repeated notice that they would be in violation of the copyright laws if they did not obtain proper licensing.  Defendants also had been repeatedly informed that they were responsible for the licensing of any songs performed by bands or independent musicians at Side Pockets Lounge.  The sign Jerry Cochran posted at Side Pockets Lounge, stating that bands were responsible for the licensing of all music performed on the premises, does not absolve him or his company of the duty to comply with copyright laws. *See, e.g., EMI April Music, Inc. v. White,* 618 F. Supp. 2d 497, 507 (E.D. Va. 2009) ("Even when a restaurant proprietor instructs band members not to perform copyrighted music at his establishment, or inserts a provision to that effect in the band's contract, such proprietor cannot escape vicarious liability when he has a right to supervise and a financial interest in such performance.") (citations omitted).  The same is true for Jerry Cochran's alleged relative lack of education, lack of experience in the area of businesses involving musical performances, and failure to obtain legal counsel.  Cochran apparently is sufficiently sophisticated to have run a business for several years, and to recognize the benefit of hiring live musicians to perform at his business.  He chose to hire a band to play at Side Pockets Lounge, and he chose to ignore both

BMI's warnings that he and his corporation could be subjected to legal liability if he did not obtain proper licensing, and BMI's suggestions that he should obtain legal representation. In fact, the record indicates that Cochran and his corporation *were* represented by counsel at some point during the time period when BMI was attempting to persuade them to purchase a license. BMI's November 6, 2007 letter to defendants stated that BMI was enclosing information that Jerry Cochran had requested *for his attorney's review*. In short, the record reflects that the failure of Jerry Cochran and Jerry Cochran, Inc. to obtain proper licensing was the result of their repeated, knowing disregard of BMI's warnings, not the result of an innocent lack of information or sophistication.

### 3.    Attorney's fees and costs

Plaintiffs also request an award of attorney's fees and costs. *See* 17 U.S.C. § 505 ("In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."). Plaintiffs' attorneys submitted an affidavit stating that they have incurred $6,560.00 in legal fees for 45.4 hours of legal work (or approximately $144.50 per hour), in addition to $839.77 in costs. Defendants do not object to the number of hours claimed by

plaintiffs' attorneys, the necessity for plaintiffs' attorneys to expend those hours in pursuit of plaintiffs' claims, the reasonableness of plaintiffs' counsel's proposed hourly rate, or the amount of expenses incurred. Instead, they object to the imposition of any attorney's fees whatsoever.

In determining whether to award attorney's fees, the court should consider factors such as "the frivolousness of the suit, motivation of the litigants, objective unreasonableness in the factual and legal components of the case, and the need to advance compensation and deterrence." *M.L.E. Music Sony/ATV Tunes, LLC,* 2008 WL 2358979, at *6 (citing *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 (1994)). Defendants assert that they "have raised numerous issues of material fact in regard to the above standards for awarding attorneys' fees and costs,"[30] but they fail to further identify those issues of fact, and they offer no evidence or legal authority to support their assertion. In light of plaintiffs' clear statutory entitlement, as prevailing parties, to an award of attorney's fees, *see* 17 U.S.C. § 505, defendants' conclusory argument does not hold water. To the contrary, courts have repeatedly held that a plaintiff is entitled to attorney's fees when the defendant knowingly and willfully violated the plaintiff's copyright. *See, e.g., M.L.E. Music Sony/ATV Tunes, LLC,* 2008 WL 2358979, at *6 ("Since the infringements in this action were intentional and

---

[30]Doc. no. 20 (defendants' brief), at 14.

deliberate and resulted in Plaintiffs taking necessary legal action, the fees and costs incurred were both reasonable and necessary."); *Dream Dealers Music,* 924 F. Supp. at 1154 ("The equities of this case justify an award of costs and attorney's fees. Parker's liability is unquestionable both legally and factually.  Parker repeatedly ignored ASCAP's many entreaties and warnings that he and WNPT-FM were in violation of the law and needed to obtain a license to perform works in ASCAP's repertoire (including the songs at issue in this case).  Finally, Parker made no attempt whatsoever to avoid infringement.").

In summary, plaintiffs are entitled to an award of attorney's fees and costs pursuant to 17 U.S.C. § 505.  The court finds the amount of fees and costs requested to be necessary, reasonable, and fair, and will therefore accept plaintiffs' request for an award of fees in the amount of $6,560.00 and costs in the amount of $839.77.

## IV. CONCLUSION

In accordance with the foregoing, summary judgment is due to be granted in plaintiffs' favor on all ten claims for copyright infringement alleged in their amended complaint.  Plaintiffs are entitled to an injunction prohibiting further infringement by defendants, an award of statutory damages in the amount of $30,000.00, attorney's fees in the amount of $6,560.00, and costs in the amount of $839.77.  An appropriate order will be entered contemporaneously herewith.

DONE this 22nd day of December, 2010.

_____
United States District Judge